UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
NICOLE GAATHJE               :    Civ. No. 3:15CV01049 (SALM)
                             :
v.                           :
                             :
CAROLYN W. COLVIN, ACTING    :    July 11, 2016
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

<u>**RECOMMENDED RULING ON CROSS MOTIONS**</u>

Plaintiff Nicole Gaathje ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff has moved to reverse the decision of the Commissioner, or in the alternative, for remand. [Doc. #13].[1]

---

[1] On April 19, 2016, plaintiff filed a Response to defendant's Motion to Affirm (the "Reply"). [Doc. #18]. The Court construes this as plaintiff's reply to defendant's Motion for an Order Affirming the Decision of the Commissioner, which was filed on March 31, 2016. [Doc. #17].  The Scheduling Order in this matter required reply briefs, if any, to be filed on or before April 15, 2016, based on defendant's filing deadline of April 1, 2016. [Doc. #12]. Plaintiff's reply brief was not timely filed. Accordingly, the Court will not consider any arguments raised therein.

1

For the reasons set forth below, defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #17]** is **GRANTED**. Plaintiff's Motion for Order reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #13]** is **DENIED**.

## I.   PROCEDURAL HISTORY[2]

Plaintiff filed concurrent applications for DIB and SSI on December 23, 2011, alleging disability beginning April 2, 2011. (Certified Transcript of the Administrative Record, compiled on August 8, 2015, (hereinafter "Tr.") 183-200). Plaintiff's application was denied initially on February 24, 2012, (Tr. 76-83),[3] and upon reconsideration on July 11, 2012. (Tr. 84-89).

On August 29, 2013, the plaintiff, accompanied and represented by attorney Grant Dail, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Ryan Alger. (Tr. 31-51, 122-44, 148-82). Vocational Expert Steven Sachs also appeared and testified at this hearing. (Tr. 47-51, 145-47). On October 23, 2013, the ALJ issued an unfavorable decision. (Tr. 17-30). On May 18, 2015, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's October 23, 2013,

---

[2] The parties filed a Joint Statement of Fact and Medical Chronology, which details the relevant "Procedural Dates" and "Medical and Vocational Fact." [Doc. #16].

[3] The initial notices of decision are undated. <u>See</u> Tr. 76-83. Other evidence of record, however, suggests that plaintiff's claim was denied initially on February 24, 2012. <u>See</u> Tr. 52-62.

decision the final decision of the Commissioner. (Tr. 1-5). The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by attorney Olia Yelner, filed this timely action for review and now moves to reverse the Commissioner's decision. [Doc. #13]. On appeal, plaintiff asserts that:

1.   The ALJ erred at step two of the sequential evaluation;

2.   The ALJ erred at step three of the sequential evaluation;

3.   The ALJ erred in his evaluation of the evidence;

4.   The ALJ failed to properly weigh the opinion evidence of plaintiff's treating sources;

5.   The ALJ erred in evaluating plaintiff's pain;

6.   The ALJ failed to properly determine plaintiff's Residual Functional Capacity; and

7.   The ALJ erred at step five of the sequential evaluation.

As set forth below, the Court concludes that the ALJ did not err as contended by plaintiff.

## II.   STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in

making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

4

deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In

reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>.**" <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (collecting cases).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of

6

substantial gainful work which exists in the national economy."
42 U.S.C. §423(d)(2)(A)(alterations added); 20 C.F.R.
§§404.1520(c), 416.920(c) (requiring that the impairment
"significantly limit[] ... physical or mental ability to do
basic work activities" to be considered "severe" (alterations
added)).

There is a familiar five-step analysis used to determine if
a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the
Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If
> he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an
> impairment, the third inquiry is whether, based solely
> on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations. If
> the claimant has such an impairment, the Secretary
> will consider him disabled without considering
> vocational factors such as age, education, and work
> experience; the Secretary presumes that a claimant who
> is afflicted with a "listed" impairment is unable to
> perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual
> functional capacity to perform his past work. Finally,
> if the claimant is unable to perform his past work,

the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)). The residual functional capacity or "RFC" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be

broadly construed and liberally applied." Id. (internal quotation marks omitted).

## IV.  __THE ALJ'S DECISION__

Following the above-described five-step evaluation process, ALJ Alger concluded that plaintiff was not disabled under the Act. (Tr. 30). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 2, 2011. (Tr. 22). At step two, the ALJ found that plaintiff had the severe impairment of vertigo. (Tr. 23). The ALJ also found that plaintiff suffered from the following non-severe impairments: irritable bowel syndrome (IBS)/gastroesophageal reflux disease (GERD); helicobacter pylori (H. pylori) infection; and affective and anxiety disorders. Id. In making the determination that plaintiff's affective and anxiety disorders were non-severe at step two, the ALJ conducted a psychiatric review technique and found that plaintiff had no limitations in her activities of daily living, mild limitations in her abilities of social functioning, concentration, persistence or pace, and no episodes of extended duration decompensation. (Tr. 23-24). The ALJ also considered plaintiff's polyarthralgia and found it was not a medically determinable impairment. (Tr. 24-25).

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal

the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 25). The ALJ specifically considered Listing 2.07 (disturbance of labyrinth-vestibular function). Id.

Before moving onto step four, the ALJ found plaintiff had the RFC "to perform a full range of work at all exertional levels[,]" but with no exposure to hazardous machinery or unprotected heights. Id. At step four, the ALJ found plaintiff had no past relevant work. (Tr. 29). At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. (Tr. 29-30).

## V.   DISCUSSION

Plaintiff asserts seven arguments in support of reversal or remand. The Court will address each in turn.

### A.   Step Two Determinations

At step two, ALJ Alger found that plaintiff suffered from the severe impairment of vertigo. (Tr. 23). Plaintiff contends that the ALJ erred at step two by failing to find other of her alleged impairments severe. [Doc. #13-1 at 8]. Defendant generally responds that the ALJ properly evaluated plaintiff's impairments at step two of the sequential evaluation. [Doc. #17-1 at 5-8].[4]

---

[4] Page numbers cited to in defendant's brief correspond with the ECF-heading page numbers.

At step two, the ALJ found, in pertinent part:

In addition to her "severe" impairments, the claimant medical history is significant for irritable bowel syndrome (IBS)/gastroesophageal reflux disease (GERD), helicobacter pylori (H. pylori) infection, an affective disorder and an anxiety disorder. These impairments are nonsevere as they result in minimal, if any, limitations in the claimant's ability to perform work related activities.

...

The claimant's medically determinable mental impairments of affective and anxiety disorders do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

(Tr. 23 (sic)). Following these findings, the ALJ conducted a thorough review of the medical evidence relating to plaintiff's non-severe impairments, and conducted a psychiatric review technique, which explicitly considered the paragraph B and C criteria used for evaluating the severity of mental impairments. See Tr. 23-29.

A step two determination requires the ALJ to determine the severity of the plaintiff's impairments. See 20 C.F.R. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii); see also id. at (c). At this step, the plaintiff carries the burden of establishing that she is disabled, and must provide the evidence necessary to make determinations as to her disability. See 20 C.F.R. §§404.1512(a), 416.912(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic

work activities. See Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" that constitutes only a slight abnormality having a minimal effect on an individual's ability to perform basic work activities. See id.

Plaintiff contends, without explication, that the ALJ erred by failing to find that the following impairments are severe: hearing loss; blurred vision; shortness of breath; GERD; Heptatpmegaly (enlargement of the liver); scoliosis; chronic abdominal pain and nausea; IBS; hiatal hernia; generalized anxiety disorder; fatigue; allergic rhinitis and sinusitis; lumbar back pain; pleuratic pain; myositis; joint pain; migraine headaches; Meniere's Disease; anemia; arthralgia; asthma; depressive disorder; panic disorder with agoraphobia; hand pain; wrist pain; elbow pain; shoulder pain; and reactive airways dysfunction syndrome. [Doc. #13-1 at 8]. With the exception of plaintiff's alleged anxiety, joint pain, and breathing problems, plaintiff fails to develop any argument as to how the remainder of these diagnoses constitutes a medically determinable severe impairment. Accordingly, any such argument that the remainder of these diagnoses should have been found severe at step two is waived, due to the lack of argument by plaintiff. See, e.g., Vilardi v. Astrue, 447 F. App'x 271, 272 n.2 (2d Cir. 2012) (issues not raised on appeal deemed waived); Norton v. Sam's

<u>Club</u>, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").[5]

At step two, if the ALJ finds any impairment is severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." <u>Jones-Reid v. Astrue</u>, 934 F. Supp. 2d 381, 402 (D. Conn. 2012) (quoting <u>Pompa v. Comm'r of Soc. Sec.</u>, 73 F. App'x 801, 803 (6th Cir. 2003)), <u>aff'd</u>, 515 F. App'x 32 (2d Cir. 2013). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." <u>Pompa</u>, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)). Thus, as long as the ALJ considers all impairments at later stages of the analysis, failure to find particular conditions "severe" at step two, even if erroneous, constitutes harmless error. <u>See</u> <u>Reices-Colon v. Astrue</u>, 523 F. App'x 796, 798 (2d Cir. 2013) ("Because [non-severe] conditions were considered during the subsequent steps, any error was harmless."); <u>Rivera</u>

---

[5] It bears noting that "the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" <u>Barone v. Colvin</u>, No. 13CV896(JTC), 2015 WL 1886883, at *6 (W.D.N.Y. Apr. 24, 2015) (quoting <u>Coleman v. Shalala</u>, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

v. Colvin, 592 F. App'x 32, 33 (2d Cir. 2015) ("[E]ven assuming that the ALJ erred at step two, this error was harmless, as the ALJ considered both [claimant's] severe and non-severe impairments as he worked through the later steps.").

Here, the ALJ found a severe impairment and proceeded with the sequential evaluation, during which all impairments, severe and non-severe, were considered. The ALJ explicitly considered the nature and extent of plaintiff's affective and anxiety disorders, which he found to be "nonsevere" in his step two analysis. See Tr. 23-24, 26, 28. He further considered plaintiff's joint pain, which he found was not medically determinable. See Tr. 24-25, 26, 28. He further considered the minimal impairments associated with plaintiff's IBS, GERD, and H. pylori infection. See Tr. 28. Accordingly, even if the ALJ erred as plaintiff contended, any such error would be harmless, and would not support a reversal of the Commissioner's decision. Accord Rivera, 592 F. App'x at 33.

Nevertheless, plaintiff argues that her "mental health, and specifically her anxiety, prevents her from being able to leave her home[,]" and therefore, the ALJ's conclusion that plaintiff's mental health problems were "nonsevere as the result in minimal, if any, limitations in the claimant's ability to perform work related activities[,]" is erroneous. [Doc. #13-1 at 9 (sic)]. In support of this argument, plaintiff relies on her

14

testimony that "she has panic attacks if she has to leave her home." Id. Plaintiff's argument is without merit and ignores the other evidence of record noted by the ALJ. For example, the ALJ recounted evidence of plaintiff's activities of daily living and found no limitations in this functional area. (Tr. 23). With respect to social functioning, the ALJ found plaintiff suffered only mild limitations and summarized medical records noting that plaintiff was not experiencing panic attacks while on Lexapro and that she was generally socially appropriate during examinations. (Tr. 24). Although there may be evidence of record supporting the plaintiff's position, that is not the issue before the Court. See Bonet, 523 F. App'x at 59. Rather, the Court must determine whether substantial evidence of record supports the ALJ's findings. Here, it does. See, e.g., Tr. 213-20 (Activities of Daily Living report); Tr. 488 (noting under social history that plaintiff is "Active but no formal exercise"); Tr. 439, 449, 458, 467, 471, 485, 489 (demonstrating "normal" and "appropriate" mood and affect on examination); Tr. 444 (normal mental status examination); Tr. 448, 470, 488 (plaintiff denied anxiety during review of systems); Tr. 475 (psychiatric follow up noting that plaintiff's anxiety "is controllable" and "a little better with the clonazepam"). Additionally, the only evidence plaintiff relies upon to support her argument is her subjective testimony. For reasons that will

be discussed below, the ALJ properly discounted the credibility of plaintiff's testimony, and therefore was not required to credit the self-serving statement that plaintiff has panic attacks when leaving the house. Accordingly, the Court finds no error with the ALJ's evaluation of plaintiff's mental impairments at step two.

Plaintiff further contends that "the ALJ ignored all of Ms. Gaathje's pain conditions[,]" and "erred in failing to make severity findings" as to plaintiff's alleged "chronic pain in her shoulders, wrists, hands, and joints." [Doc. #13-1 at 9]. Plaintiff's argument is again without merit. At step two, the ALJ did not ignore plaintiff's "pain conditions[.]" Indeed, at step two the ALJ explicitly considered plaintiff's "alleged disabling symptoms due to joint pain[,]" including her "complaints of joint, hand, elbow, wrist and shoulder pain[.]" (Tr. 24-25 (citing Exhibits 12F, 15F)). In considering such impairments, the ALJ concluded that plaintiff's polyarthralgia, the alleged cause of such joint pain, was not a medically determinable impairment, and even if it were, did not meet the durational criteria to be considered a severe impairment. (Tr. 25). As noted above, plaintiff bears the burden of establishing that her impairments are severe at step two. See 20 C.F.R. §§404.1512(a), 416.912(a). "The second step [of the sequential evaluation] requires the Commissioner to consider the medical

severity of the claimant's impairment to determine whether []
she has a severe medically determinable physical or mental
impairment that meets the duration requirement in C.F.R.
§404.1509, or a combination of impairments that is severe and
meets the duration requirement." Henningsen v. Comm'r of Soc.
Sec. Admin., 111 F. Supp. 3d 250, 264 (E.D.N.Y. 2015) (citation
and internal quotation marks omitted). "To meet the duration
requirement, the claimant's impairment must either be expected
to result in death, or it must have lasted or must be expected
to last for a continuous period of at least 12 months." Id.
(citation and internal quotation marks omitted). Here, the
plaintiff has failed to point to any evidence of record to
refute the ALJ's conclusion that plaintiff's alleged
polyarthralgia, even if medically determinable, does not meet
the duration requirement set forth in 20 C.F.R. §404.1509.
Indeed, the parties' Joint Statement of Fact and Medical
Chronology note that "on June 15, 2013 Ms. Gaathje's complained
of a 'several month history of wrist, hand, elbow and feet
pain[.]'" [Doc. #16 at 4 (sic)]. As of the date of the ALJ's
ruling, October 23, 2013, plaintiff's alleged polyarthralgia,
which -- as stipulated by the parties -- started a few months
before June 2013, did not meet the twelve month durational
requirement of the Regulations. Substantial evidence of record
supports this conclusion. See Tr. 447, 469, 535. Accordingly,

the Court finds no error in the ALJ's conclusions with respect to plaintiff's polyarthralgia.

Finally, plaintiff also claims to suffer from respiratory impairments caused by "severe allergies[,]" and baldly claims the ALJ erred by failing to make severity findings with respect to this alleged impairment. [Doc. #13-1 at 9]. Plaintiff points to no evidence to support her contention that her respiratory impairments are severe.[6] Moreover, the ALJ did, in fact, consider plaintiff's respiratory impairments. See, e.g., Tr. 28 ("[H]er symptoms of dizziness seem to correspond with her sinus infections and improve when her respiratory symptoms improve."). The ALJ's decision further reflects that he considered medical records which noted plaintiff's complaints of breathing difficulties. See Tr. 26 (citing Exhibits 4F and 6F, which reflects plaintiff's complaints and/or diagnoses of: "upper respiratory illness" (Tr. 341, 343); allergic rhinitis (Tr. 347, 394); history of allergies and pleurisy (Tr. 347); pleuritic pain (Tr. 350)). Plaintiff fails to articulate how her alleged respiratory impairments cause functional limitations.

_____

[6] Of note, the opinion of plaintiff's treating source, APRN Andrea Dameron, which plaintiff later argues is entitled to great weight, found that plaintiff had no limitations with respect to exposure to dust, fumes, odors, chemicals and gases. (Tr. 561). The State reviewing non-examining physicians similarly found that plaintiff had no limitations with respect to exposure to fumes, odors, dusts, gases and poor ventilation. (Tr. 58, 70).

Accordingly, the Court finds no error in the ALJ's consideration of plaintiff's alleged respiratory impairments.

Thus, for the reasons stated, the Court finds no reversible error at step two of the sequential evaluation.

**B.    Step Three Determination**

The plaintiff challenges the ALJ's findings at step three, arguing that her "medical records contain descriptions of all of the clinical signs and symptoms necessary to meet or to be equivalent to the Listing of Section 2.07." [Doc. #13-1 at 9]. Defendant contends that plaintiff "ignor[es] the actual requirements of the Listing and the evidence which directly contradicts her argument." [Doc. #17-1 at 8].

Listing 2.07 addresses:

Disturbance of labyrinthine-vestibular function (Including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:

A.    Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and

B.    Hearing loss established by audiometry.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 2.07. At step three, the ALJ found:

The claimant does not present with an impairment that, either singly or in combination, medically meets or equals the severity requirements of any listed impairment. The claimant's Meniere's disease was evaluated under listing 2.07, concerning disturbance

of labyrinthine-vestibular function. Although the medical evidence of record showed evidence of tinnitus, and progressive loss of hearing, it does not demonstrate frequent attacks of balance disturbance accompanied by disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests. The medical evidence shows that the claimant underwent vestibular tests, which showed borderline normal results that were not clinically significant. Exhibits 7F, 9F. Consequently, I find that the claimant's Meniere's disease does not meet or medically equal the criteria of listing 2.07.

(Tr. 25).

"The applicant bears the burden of proof [at this stage] of the sequential inquiry[.]" <u>Talavera</u>, 697 F.3d at 151 (alterations added). "For a claimant to show that h[er] impairment matches a listing, it must meet <u>all</u> of the specified medical criteria." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). Plaintiff contends that her Ménière's disease, vertigo, chronic dizziness and blurred vision satisfy section A of Listing 2.07. [Doc. #13-1 at 10]. This argument is without merit. To satisfy Section A of Listing 2.07, plaintiff has the burden of demonstrating she has "[d]isturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 2.07(A). Plaintiff's vestibular testing, however, was "[b]orderline normal": "Positional testing evoked a few beats of horizontal positional nystagmus in several positions, however these were <u>not clinically significant</u>. Ocular-motor results were <u>within</u>

normal limits. Bithermal caloric irrigations suggested no
significant unilateral weakness nor directional preponderance."
(Tr. 416 (all emphases added)). The record is otherwise devoid
of evidence of disturbed function of vestibular labyrinth
demonstrated by caloric or other vestibular tests. See Dumas v.
Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (The Commissioner
"is entitled to rely not only on what the record says, but also
on what it does not say[.]" (citation omitted)).

    In support of her argument that her Ménière's disease,
vertigo, chronic dizziness and blurred vision satisfy section A
of the Listing, plaintiff merely cites to portions of the record
reflecting a corresponding diagnosis or her own description of
symptoms. See Doc. #13-1 at 10. Such bare recitals of a
diagnosis are not enough to satisfy plaintiff's burden of
demonstrating that her impairments meet the criteria of a
listing. See 20 C.F.R. §§404.1525(d), 404.925(d) ("Your
impairment(s) cannot meet the criteria of a listing based only
on a diagnosis. To meet the requirements of a listing, you must
have a medically determinable impairment(s) that satisfies all
of the criteria in the listing."). Plaintiff's subjective
description of her symptoms also will not "raise the severity of
[her] impairment(s) to that of a listed impairment." See 20
C.F.R. §§404.1529(d)(3), 404.929(d)(3) ("In considering whether
your symptoms, signs, and laboratory findings are medically

equal to the symptoms, signs, and laboratory findings of a
listed impairment, ... we will not substitute your allegations
of pain or other symptoms for a missing or deficient sign or
laboratory finding to raise the severity of your impairment(s)
to that of a listed impairment."). Therefore, plaintiff has
failed to carry her burden of demonstrating that she meets
Listing 2.07.

Accordingly, the Court finds no error in the ALJ's step
three analysis.

### C.   Characterization of the Evidence

Plaintiff argues that the ALJ mischaracterized the evidence
of record in evaluating her claims. Specifically, plaintiff
contends that "the ALJ made a serious factual error[]" when he
stated that plaintiff "is able to perform household chores and
care for her [eight] year old child despite her vertiginous
symptoms." [Doc. #13-1 at 11]. Defendant responds that "these
are Plaintiff's own explicit statements[,]" and the record
reflects that plaintiff was in fact the primary caretaker for
her children, and engaged in gardening. [Doc. #17-1 at 10-11].

Ironically, in arguing that the ALJ mischaracterized the
evidence, plaintiff mischaracterizes the ALJ's opinion. The
statement with which plaintiff takes issue reads: "[T]he
claimant testified that she is able to perform household chores
and care for her 8-year-old child despite her vertiginous

symptoms." (Tr. 28). This is an accurate recitation of
plaintiff's testimony. See Tr. 37-38 (testifying that she has
three children, including an eight-year old, that live with her,
and that her husband works full time); Tr. 38-39 (testifying
that she tries to perform household chores, and that some days
are better than others). Accordingly, the Court finds no merit
in this argument.

Plaintiff contends the ALJ ignored portions of her
testimony that undermine the ALJ's finding that she is able care
for her child and perform household chores. However, the ALJ did
address this testimony:

> She testified that she tries to do household chores
> but has difficulty cooking and doing laundry due to
> multiple joint pains, about 2 to 3 times per week. ...
> She explained that some days she has a hard time
> getting out of bed but she still does because she has
> to care for her 8 year old child. She admitted that
> she is able to care for herself but has problems
> washing her hair, putting a shirt over her head, and
> wearing nonslip on shoes. She specified that she has
> constant pain everyday but on good days, she is able
> to do light dusting, load the dishwasher, and cook.

(Tr. 26). Such testimony does not support a finding that
plaintiff is completely unable to perform household chores.
Rather, it supports the ALJ's conclusion that despite
plaintiff's alleged debilitating limitations, she is able to
perform some household chores and care for her children.
Accordingly, the Court finds no error.

23

Plaintiff also contends that even if she is able to perform "some chores, some of the time, she is still unable to work[,]" and that "[t]he ALJ erroneously equates the ability of the claimant to perform various Activities of Daily Living with the ability to work, ignoring the difficulties and pain experienced in the course of these activities." [Doc. #13-1 at 11]. Plaintiff's characterization of the ALJ's findings is again unsupported. The ALJ does not equate plaintiff's activities of daily living with her ability to work. Rather, he permissibly considered plaintiff's activities of daily living as but one of many factors in determining both plaintiff's credibility and RFC. See 20 C.F.R. §§404.1545(a)(1), (3), 416.945(a)(1), (3) ("We will assess your residual functional capacity based on all the relevant evidence in your case record. ... We will assess your residual functional capacity based on all of the relevant medical and other evidence." (emphasis added)); 20 C.F.R. §§404.1529(c), 416.929(c) (setting forth the factors the ALJ must consider in assessing the credibility of plaintiff's complaints, including "daily activities[.]"). Indeed, after a comprehensive summary of the evidence of record, the ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the substantial weight of the objective medical evidence, the claimant's level of daily activity, her allegations of disabling symptoms which are inconsistent with the findings of

the objective medical record, and the opinions of the
state agency consultants that have been given great
weight for the reasons listed above.

(Tr. 29). Therefore, it is apparent from the face of the ALJ's
opinion that he did not, as plaintiff contends, equate her
ability to perform activities of daily living with her ability
to engage in substantial gainful employment. See, e.g., Genier
v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a
claimant's RFC, the ALJ is required to take the claimant's
reports of pain and other limitations into account ... but is
not required to accept the claimant's subjective complaints
without question; he may exercise discretion in weighing the
credibility of the claimant's testimony in light of the other
evidence in the record." (citations omitted)); Cichocki v.
Astrue, 729 F.3d 172, 178 (2d Cir. 2013) (finding that "the
ALJ's [RFC] conclusion is supported by substantial evidence[,]"
including a medical assessment, and plaintiff's Activities of
Daily Living questionnaire indicating she was able to walk her
dogs and clean her house).

For the reasons stated, the Court finds that the ALJ did
not err in his evaluation of the evidence as contended, that he
afforded plaintiff a full and fair hearing and therefore, there
is no reversible error.

###### D.   Weighing of Medical Opinion Evidence

Plaintiff next takes issue with the weight afforded to the opinion of plaintiff's treating source, APRN Andrea Dameron. [Doc. #13-1 at 12-14]. Defendant responds that the ALJ properly considered Ms. Dameron's opinion, and "explained why it warranted little weight compared to the medical opinions" of the State reviewing non-examining physicians. [Doc. #17-1 at 12-14].

APRN Dameron issued an opinion on August 23, 2013, which purports to retrospectively apply to the year 2011. (Tr. 559-61). The opinion indicates that APRN Dameron treated plaintiff from May 29, 2013, through August 8, 2013. (Tr. 559). The opinion sets forth the following pertinent limitations: plaintiff may occasionally and frequently lift and/or carry ten pounds; plaintiff can stand and/or walk about six hours in an eight-hour workday; plaintiff is limited in her upper extremity ability in pushing and pulling; plaintiff can never kneel or crawl, but can occasionally climb, balance, crouch, stoop, reach and finger. (Tr. 559-61). APRN Dameron states that plaintiff's "polyarthralgia," "multiple joint involvement" and vertigo support these limitations. Id. With respect to this opinion, the ALJ stated:

> I afford little weight to Nurse Dameron's opinion. It
> appears that most of the limitations that she found
> were based on the claimant's reports of pain rather
> than her vertigo. She has given the claimant lifting
> and manipulative restrictions that cannot be

attributed to the vertigo. As mentioned previously, the claimant's alleged multiple joint pain has not been attributed to any particular impairment. She also indicated that the claimant had moderate to severe hearing loss, which is inconsistent with the medical evidence that showed hearing gloss in the mild range. Additionally, Nurse Dameron only treated the claimant for a short time from May 29, 2013 to August 8, 2013, which renders her opinion less reliable. Also, as a nonmedical source, Nurse Dameron's opinion is entitled to less weight.

(Tr. 28 (sic)). For the reasons that follow, the Court finds that the ALJ properly considered and weighed the opinion of APRN Dameron.

The Regulations provide that a treating source's opinion will usually be given more weight than a non-treating source. See 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. Id. If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. When weighing any medical opinion, treating or otherwise, the regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship;

relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6); 416.927(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996).

Plaintiff contends that the ALJ incorrectly afforded APRN Dameron's opinion little weight because it was based on plaintiff's reports of pain, when in fact, such pain had been attributed by particular impairments. [Doc. #13-1 at 13]. Plaintiff supports this contention by asserting that plaintiff had been diagnosed with lumbar back pain, myositis, joint pain, arthralgia, and hand, wrist, elbow and shoulder pain. Id. (collecting citations to the administrative record). As correctly noted by defendant, many of the records to which plaintiff cites in support of this position do not reflect a diagnosis, but rather plaintiff's subjective complaints of pain.[7]

---

[7] The Court further notes that some of the records to which plaintiff cites are duplicates of the same medical record. Compare Tr. 518 with, Tr. 568 (cited as support that plaintiff had been diagnosed with shoulder, elbow, hand and wrist pain). Additionally, many of the records to which plaintiff cites note an "assessment" for an alleged pain, such as low back pain, but do not appear related to the treatment record on which such assessment is found. For example, plaintiff cites to page 485 of the administrative record in support of her contention that she has been diagnosed with lumbar back pain. [Doc. #13-1 at 13]. However, the medical record on which this assessment appears relates to a psychiatric follow up and there was no examination of plaintiff's lumbar back. See Tr. 484-85; see also Tr. 456-58, 466-68, 475-77.

See, e.g., Tr. 390, 439, 487, 518, 535. Despite plaintiff's
arguments to the contrary, an ALJ may properly discount a
treating source's opinion where it is based on plaintiff's
subjective complaints, versus objective medical evidence. See
Roma v. Astrue, 468 F. App'x 16, 19 (2d Cir. 2012) (ALJ properly
discounted opinion of treating physician when considering,
amongst other appropriate factors, that "the supportability of
[the] opinion was doubtful as it was based largely upon
[plaintiff's] subjective responses, which were not themselves
entirely credible for the reasons explained in the ALJ's
decision." (alterations added) (citing 20 C.F.R.
§404.1527(d)(3))); Polynice v. Colvin, 576 F. App'x 28, 31 (2d
Cir. 2014) (the ALJ did not "improperly deny controlling weight
to any treating physician's medical opinion[,]" where much of
that "'medical opinion' was no more than a doctor's recording of
[plaintiff's] own reports of pain."). Here, this is again but
one factor the ALJ appropriately considered in affording limited
weight to APRN Dameron's opinion.

    Plaintiff continues that "even if a treating source's
opinion is based on subjective complaints, that is not a reason
to discount it." [Doc. #13-1 at 13]. In support of this
proposition, plaintiff cites to the Second Circuit case of
Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003).
Plaintiff's reliance on Green-Younger is misplaced. First, as

previously stated, the Second Circuit has found that an ALJ may properly discount a treating source's medical opinion where it is based on reports of plaintiff's subjective complaints. See, e.g., Roma, 468 F. App'x at 19; Polynice, 576 F. App'x at 31. Second, although Green-Younger states that "a patient's reports of complaints, or history, is an essential diagnostic tool[,]" in that case, the claimant suffered from fibromyalgia. The opinion goes to great lengths discussing that fibromyalgia "eludes [objective] measurement[]" and that "there are no objective tests which can conclusively confirm the disease[.]" Green-Younger 335 F.3d at 108. Accordingly, in light of the claimant's specific alleged impairment in Green-Younger, i.e., fibromyalgia, the Second Circuit found the ALJ erred in not affording the claimant's treating physician controlling weight because it was not supported by "objective findings." Id. By contrast here, plaintiff was not suffering from fibromyalgia, but rather, allegedly from impairments readily determinable by objective measurement, thus removing her argument from the ambit of Green-Younger.

The Court further finds that the ALJ provided "good reasons" in discounting APRN Dameron's opinion, all of which are supported by substantial evidence in the record. In addition to permissibly considering that APRN Dameron's opinion was largely based on plaintiff's subjective complaints, the ALJ also

properly considered the length of APRN Dameron's treating
relationship with the plaintiff – a little over two months - and
concluded that this rendered her opinion less reliable. (Tr. 28,
559); see 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2) (listing
length of treatment relationship amongst the factors the ALJ
should consider in weighing any medical opinion); see also
Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 378 (6th Cir.
2013) (finding ALJ properly afforded little weight to opinion of
therapist where, inter alia, therapist treated claimant for only
five months); Ladd v. Comm'r of Soc. Sec., No.
5:13CV0236(LEK)(ATB), 2014 WL 2779167, at *8 (N.D.N.Y. June 19,
2014) ("The longer that the physician has treated a patient, the
more that he or she will be aware of the 'longitudinal picture'
of the plaintiff's impairment(s). If a physician does not have
that perspective due to the short length of treatment, the
Commissioner does not necessarily need to afford the physician's
opinion greater weight." (internal citation omitted)).

     Finally, as noted by the ALJ, as a nurse practitioner, APRN
Dameron is not considered an "acceptable medical source" under
the regulations, and therefore her opinion is entitled to less
weight. See 20 C.F.R. §§404.1513(a)(1)-(5), 416.913(a)(1)-(5)
(listing acceptable medical sources who can provide evidence to
establish an impairment, none of which include nurse
practitioners); see also SSR 06-03P, 2006 WL 2329939, at *5

(S.S.A. Aug. 9, 2006) ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, 'acceptable medical sources' 'are the most qualified health care professionals.'").

Other evidence of record also conflicts with the opinions provided by APRN Dameron. For example, APRN Dameron opined that plaintiff had "moderate/severe hearing issues due to menieres and chronic lymphatic disturbances" (Tr. 561 (sic)) but testing revealed only mild hearing loss. (Tr. 382, 497). Further, although APRN Dameron ascribed many limitations to plaintiff's alleged polyarthralgia, many of plaintiff's physical examinations were non-remarkable. See, e.g., Tr. 439, 498, 537. Plaintiff herself additionally reported to APRN Dameron that her alleged chronic joint pain was "annoying" but not "impeding her life[.]" (Tr. 447).

Accordingly, the Court finds that the ALJ provided good reasons for discounting APRN Dameron's August 2013 opinion, all of which are supported by substantial evidence in the record, and therefore, there is no reversible error in the ALJ's consideration of APRN Dameron's opinion.

### E.   Evaluation of Pain

Plaintiff next argues: "The ALJ made no specific findings concerning the location, intensity, frequency or duration of any of Ms. Gaathje's pains, and in fact, the ALJ never specifically said whether Ms. Gaathje does, or does not have, lower back pain, shoulder pain, arm pain, stomach pain, epigastric pain, hand pain, elbow pain or wrist pain." [Doc. #13-1 at 14]. Plaintiff further contends that the ALJ "ignored Ms. Gaathje's pain conditions because of his failed analysis of pain as an impairment in and of itself." Id. at 15. Defendant responds that the ALJ "extensively and explicitly considered" plaintiff's allegations in accordance with the Regulations. [Doc. #17-1 at 14].

Plaintiff's arguments are misplaced and an inaccurate characterization of the ALJ's decision. For example, at step two, the ALJ stated:

> It was noted that she continued to have chronic abdominal pain as well as nausea, and was found to have irritable bowel. However, the pain that she described that day was different, occurring in the lower quadrants with no nausea. At the time, her symptoms were maintained on Zantac and Dicyclomine with good effect. ... On April 3, 2012, the claimant reported gastrointestinal symptoms of abdominal pain, bloating, nausea, reflux/heartburn, constipation, and diarrhea. Upon examination, she had generalized and nonspecific abdominal tenderness. She was started on Pepcid and Dexilant for her GERD. ... As the foregoing medical evidence shows that the claimant's H. pylori infection was treated successfully and her GERD/IBS symptoms are controlled on medication with only one

bowel movement per day, I find that these impairments
are nonsevere.

...

At the hearing, the claimant also alleged disabling
symptoms due to joint pain. However, the medical
evidence shows that on April 15, 2013, the claimant
indicated that she had worsening joint pain and
burning in her joints, which she found annoying but
did not find it was impeding her life. Exhibit 10F.
Later on August 9, 2013, the claimant went to a
rheumatology evaluation with complaints of joint,
hand, elbow, wrist and shoulder pain. Exhibits 12F,
15F. Upon examination, her joints had no synovitis but
she had tenderness of the knees, ankles, shoulders and
bilateral wrists with some decreased range of motion.
She was found likely to have polyarthralgia but no
evidence of inflammatory disease. As the claimant's
polyarthralgia was not attributed to a specific
diagnosis, I find that it is not a medically
determinable impairment. Even if the polyarthralgia
was considered a medically determinable impairment, it
does not meet the 12 month criteria required to be
considered a severe impairment.

(Tr. 23-25). The ALJ additionally addressed plaintiff's claims

of pain in his discussion of plaintiff's RFC. See Tr. 25-26, 28.

Many of plaintiff's complaints of pain were attributed to

her polyarthralgia, which the ALJ found was not a medically

determinable impairment. (Tr. 25). Pursuant to the regulations:

"Your symptoms, such as pain, fatigue, shortness of breath,

weakness, or nervousness, will not be found to affect your

ability to do basic work activities unless medical signs or

laboratory findings show that a medically determinable

impairment(s) is present." 20 C.F.R. §§404.1529(b), 416.929(b).

Here, because the ALJ found that plaintiff's pain in large part

34

was not the result of a medically determinable impairment, he was not required make findings about whether such subjective symptoms affected plaintiff's ability to do basic work activities. See id.; see also 20 C.F.R. §§404.1529(d)(4), 416.929(d)(4).

"[T]he subjective element of pain is an important factor to be considered in determining disability[.]" Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted). However, an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). Indeed, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). This is precisely the evaluation performed by the ALJ here. See Tr. 25-28.

Notably, plaintiff does not point to any evidence of record suggesting how her alleged pain-related conditions result in functional loss. Rather, plaintiff largely relies on her own testimony concerning the nature of her pain. See Doc. #13-1 at 14-15. Although plaintiff claims that her "doctors have said that her bilateral wrist pain is getting worse[,]" id. at 14

(citing Tr. 535), the record cited to in support of this proposition in fact reflects plaintiff's own self-report of her pain "getting gradually worse." (Tr. 535). Plaintiff further mischaracterizes a diagnostic imaging report in support of her argument. Plaintiff contends that she "has an osseous fusion between the tarsal bones in her feet (Tr. 529)." [Doc. #13-1 at 14]. The record cited to at page 529 of the administrative record actually reads: "findings/impression: normal mineralization alignment[.] No evidence of acute fracture of subluxation[.] The joint space between the tarsal bones and the base of the third metatarsal is not well seen, osseous fusion may be present[.]" (Tr. 529 (emphasis added)). Regardless, plaintiff fails to equate these statements with any functional limitations.

Accordingly, plaintiff's argument on this point is without merit, and the Court finds no reversible error in the ALJ's consideration of plaintiff's pain.

### F. RFC Determination

Plaintiff next contends that the ALJ failed to properly determine her RFC: "The ALJ's RFC description far exceeds Ms. Gaathje's actual RFC and is not supported by medical records or physician opinions." [Doc. #13-1 at 15]. Defendant generally responds that substantial evidence supports the ALJ's RFC determination. See Doc. #17-1 at 15-16. Here, the ALJ found that

36

plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: no exposure to hazardous machinery or unprotected heights." (Tr. 25).

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner ... an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record. ... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Walker v. Astrue, No. 1:08CV00828(RJA)(JJM), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (quoting Lewis v. Comm'r of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005) (internal citations omitted)).

Plaintiff first argues that plaintiff's RFC "far exceeds" her actual RFC and is not supported by the medical records or physician opinions. [Doc. #13-1 at 15]. She further contends that the RFC finding "means that the ALJ believes Ms. Gaathje can lift over 100 pounds." Id. Defendant responds: "The implication Plaintiff seeks rests on a misleading omission of the relevant legal standards." [Doc. #17-1 at 15].

At first glance, plaintiff's argument is compelling – namely, a finding that she can perform work at all exertional

levels is not supported by the evidence of record. However, as noted by defendant, plaintiff ignores the relevant legal standards in making this argument. "A RFC determination must account for limitations imposed by both severe and nonsevere impairments." Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012) (citations omitted); see also Jones-Reid, 934 F. Supp. 2d at 404 ("An RFC assessment is an individual's ability to do sustained work activities, and considers the functional limitations supported by medically determinable impairments."). Accordingly, "[o]nly functional limitations that are the result of medically determinable impairments are considered in the RFC assessment." Waddell v. Colvin, No. 3:14CV00092(MAD), 2016 WL 538471, at *4 (N.D.N.Y. Feb. 9, 2016)(citation omitted) (emphasis added). The Regulations further dictate: "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are 'not severe[]' ... when we assess your [RFC][.]" 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2) (emphasis added).

Here, the ALJ found plaintiff suffered from the following severe and nonsevere medically determinable impairments: vertigo, IBS, GERD, H. pylori infection, affective disorder, and an anxiety disorder. (Tr. 23). Notably, the ALJ determined that plaintiff's alleged joint pain/polyarthralgia was not a medically determinable impairment because it had not been

attributed to a specific diagnosis. (Tr. 25). Accordingly, because plaintiff's joint pain was not found to be a medically determinable impairment, the ALJ was not required to account for any potential limitations caused by this condition when determining plaintiff's RFC. See SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 2996) ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms[.]"); see also id. at *2 ("The Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s). Therefore, in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain[.]"). Therefore, in light of the applicable Regulations and rulings interpreting the Regulations, the Court finds no error on this point.

Building on the argument above, plaintiff also contends: "The ALJ should have included greater limitations as to Ms. Gaathje's back pain as it impairs her ability to sit, stand, walk, lift and perform postural movements such as bending." [Doc. #13-1 at 16]. However, this argument has no merit in light of the fact that plaintiff's alleged back pain could not have been caused by one of the medically determinable impairments found by the ALJ at step two. Moreover, even if plaintiff's back pain was caused by a medically determinable impairment, plaintiff points to no medical evidence in support of her argument, but rather relies solely on her testimony about her daily activities. See Doc. #13-1 at 16. Substantial evidence of record contradicts the plaintiff's characterization of her back pain. Plaintiff's treating source opined that plaintiff was able to frequently lift ten (10) pounds, and sit, stand or walk for about six (6) hours in an eight (8) hour workday. (Tr. 559-60). The State reviewing non-examiners found plaintiff suffered no exertional limitations. (Tr. 57, 69). Further, many of the physical examinations of plaintiff's back were normal. See, e.g., Tr. 439, 498, 537. Accordingly, the Court finds no error on this point.[8]

---

[8] If anything, the medical evidence of record could support a finding that plaintiff was limited to light work. Pursuant to the Regulations: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

Plaintiff next contends that the ALJ failed to include limitations with respect to the level of noise to which plaintiff could be exposed. [Doc. #13-1 at 16]. Plaintiff relies on the opinion of APRN Dameron to support her position that plaintiff "is limited in her exposure to noise due to 'vertigo and hearing loss.'" Id. However, as previously stated, the ALJ properly afforded limited weight to the opinion of APRN Dameron. Additionally, the State reviewing non-examining physicians opined that plaintiff had no limitations with respect to noise exposure. See Tr. 58, 70. These conclusions are supported by the objective medical evidence, which found plaintiff to suffer from only mild hearing loss. See Tr. 382, 497; see also Tr. 488 (August 5, 2013, Progress Note: upon review of symptoms, plaintiff denied hearing loss and vertigo). Accordingly, the Court finds no error in this respect of the ALJ's RFC determination.

---

weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§404.1567(b), 416.967(b). Because at step five the ALJ found that the relevant jobs existing in the national economy were all classified as light exertion jobs, the Court finds that plaintiff's argument on this point is without merit.

Plaintiff next contends that the ALJ failed to include limitations as to plaintiff's memory, attention, persistence, concentration and pace, and that he should have limited her to routine and repetitive work. [Doc. #13-1 at 16]. As an initial matter, the ALJ considered plaintiff's limitations as to memory, attention, persistence, concentration and pace at step two, and found that plaintiff was mildly limited in this area of functioning. (Tr. 24). The opinion also reflects that he considered plaintiff's psychiatric treatment records, the majority of which reflect normal mental status examinations. See Tr. 24, 25-26 (citing to Exhibit 10F, which corresponds to plaintiff's psychiatric treatment records); see also Tr. 444, 449, 458, 467 (normal mental status examinations). Although the record reflects several occasions on which plaintiff suffered from anxiety, see Tr. 451, 464, 473, it is for the ALJ and not the reviewing courts to resolve evidentiary conflicts. See Reynolds v. Colvin, 570 F. App'x 45, 49 (2d Cir. 2014) ("[I]t is the function of the agency, not reviewing courts, to resolve evidentiary conflicts[.]" (citation and internal quotation marks omitted)). Further, plaintiff fails to account for the statement appearing later in the RFC determination that plaintiff was limited to "an unskilled level of work with limited interactions[,]" in light of her "mood abnormalities at times[.]" (Tr. 28). Moreover, the jobs identified by the

Vocational Expert (Tr. 48), and relied upon by the ALJ at step five of the sequential evaluation (Tr. 29-30), are each classified as unskilled work, which is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§404.1568(a), 416.968(a). Accordingly, the Court finds no error on this point.

Plaintiff next contends that the ALJ failed to include limitations as to plaintiff's exposure to pulmonary irritants, and that he should have limited her exposure to irritants, dusts, gases and fumes. [Doc. #13-1 at 16]. In support of this argument plaintiff cites to various pages of the record noting diagnoses of Reactive Airways Dysfunction Syndrome, asthma, and allergic rhinitis and sinusitis; plaintiff does not, however, identify any resulting limitations. Id. This argument is without merit as the ALJ did not find that the plaintiff suffered from any medically determinable impairment which would result in limitations of plaintiff's exposure to pulmonary irritants. Additionally, the State reviewing non-examining physicians opined that plaintiff had no limitations with respect to her exposure to fumes, odors, dusts and gases. See Tr. 58, 70 These conclusions are supported by the objective medical evidence, which found that plaintiff's respiratory and sinus issues were generally treated and/or resolved with antibiotics and a

prescription nasal spray. (Tr. 347, 394). The record also reflects many normal respiratory examinations. See Tr. 390, 449, 439 (on physical examination plaintiff presented with "breathing unlabored" and "normal breath sounds"); Tr. 498 ("Normal Breath Sounds, No Respiratory Distress[]"); Tr. 537 ("chest non-tender, lungs clear, no respiratory distress"). APRN Dameron also opined that plaintiff had no limitations with respect to her exposure to dust, fumes, odors, chemicals or gases. (Tr. 561). Accordingly, the Court finds no error on this point.

Plaintiff contends that the ALJ also failed to include limitations as to plaintiff's arm, hand and wrist use, and that he should have included a limitation on her ability to finger and reach. [Doc. #13-1 at 16-17]. However, this argument has no merit in light of the fact that plaintiff's alleged limitations with respect to her arm, hand and wrist use could not have been caused by one of the medically determinable impairments found by the ALJ at step two. Even if these alleged limitations were caused by a medically determinable impairment, plaintiff points to no medical evidence in support of her argument, but rather relies on her testimony about her daily activities and the opinion of APRN Dameron, both of which the ALJ properly discounted. See Doc. #13-1 at 16-17. Additionally, the State reviewing non-examining physicians opined that plaintiff had no manipulative limitations. See Tr. 57, 70. These conclusions are

supported by the medical and other evidence of record. See Tr. 527, 532, 533, 534 (normal X-rays of plaintiff's left and right hands and wrists); Tr. 498, 537 (normal examination of extremities); Tr. 213-20 (Activities of Daily Living Report stating plaintiff had no problem with personal care, and was able to prepare meals and clean dishes). Accordingly, the Court finds no error in this respect of the ALJ's RFC determination. See Dumas, 712 F.2d at 1553, supra.

Last, plaintiff contends that the ALJ failed to include any limitations with respect to plaintiff's fatigue, as caused by her vertigo and/or Klonopin prescription, and that he should have included limitations as to plaintiff's need to take breaks or rest periods. [Doc. #13-1 at 17].[9] The record citations on which plaintiff relies in making this argument largely reflect plaintiff's self-reports of fatigue. Id. (citing Tr. 42-43, 45, 347, 390, 393, 512).[10] Although these records include an "assessment" of fatigue, such assessments were in large part based on plaintiff's self-reports. See Tr. 389-90, 393. Further,

---

[9] Notably, plaintiff references the fact that her vertigo was found to be a severe impairment, which informs the Court that plaintiff is cognizant of the legal standards governing the determination of a RFC finding. The Court accordingly questions the basis upon which plaintiff makes her argument with respect to those limitations which have no connection to a medically determinable impairment, as found by the ALJ at step two.

[10] The medical record located at page 512 of the administrative record is a duplicate of that found at page 347.

on several occasions, plaintiff did not complain of, or present with, fatigue. See Tr. 438, 448, 498 (denied fatigue); Tr. 438, 448, 458, 467 (alert and/or oriented on exam). Accordingly, the Court finds no error in the ALJ's failure to include such a limitation in the RFC assessment.

In concluding her arguments on the issue of RFC, plaintiff contends that this matter should be remanded "so the ALJ can rely on actual medical evidence to determine what really is Ms. Gaathje's [RFC] and so that the ALJ can secure testimony from a Vocational Expert as to whether any jobs exist in the state economy with Ms. Gaathje's actual functional limitations can perform." [Doc. #13-1 at 17].[11] "[A]dministrative law judges are unqualified to assess residual functional capacity on the basis of bare medical findings in instances when there is a relatively high degree of impairment." Palascak v. Colvin, No. 1:11CV0592(MAT), 2014 WL 1920510, at *8 (W.D.N.Y. May 14, 2014) (collecting cases) (emphasis added). However, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion ..., [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'" Ross v. Colvin, No. 1:14CV00444(WMS), 2015 WL 4891054, at *5 (W.D.N.Y. Aug. 17,

---

[11] A Vocational Expert did in fact testify in this matter. See Tr. 47-49. Presumably, plaintiff would like the ALJ to recall a VE to testify upon a new RFC finding.

2015) (quoting <u>Lewis v. Colvin</u>, No. 13CV1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014)). Indeed, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." <u>House v. Astrue</u>, No. 5:11CV915(GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citation omitted). Here, it is apparent that the ALJ weighed all of the evidence to make an RFC finding that complied with the Regulations and was consistent with the record as a whole, including the opinions of the State reviewing non-examining physicians. Therefore, the Court finds no error. <u>See Matta v. Astrue</u>, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted).

Accordingly, for the reasons stated, the Court finds no reversible error in the ALJ's RFC determination, which is supported by substantial evidence of record.

### G.   Step Five

Last, plaintiff contends that the ALJ erred at step five of the sequential evaluation because he failed to present credible evidence of jobs which plaintiff could perform with her "actual" RFC. [Doc. #13-1 at 18]. As a general matter, substantial evidence supports the ALJ's determination that the plaintiff is able to perform a significant number of jobs in the national economy. As discussed, the ALJ properly weighed the medical

evidence at issue, and his RFC and (unchallenged) credibility findings are supported by substantial evidence of record. As to whether there are jobs that the plaintiff can perform, the VE testified that given the RFC determined by the ALJ, the plaintiff would be able to perform occupations such as receptionist, general office clerk, and production inspector. (Tr. 48). As the testimony of the VE is consistent with the findings of the ALJ and the evidence in the record, there is substantial evidence supporting the ALJ's determination that the plaintiff can perform a significant number of jobs that exist in the national economy. Accordingly, this argument is without merit. See, e.g., Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009)("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, ... and accurately reflect the limitations and capabilities of the claimant involved[.]" (citations omitted)).

Plaintiff further challenges the specific job of receptionist identified by the VE, arguing that this job is performed at "Reasoning Level Four (R4), and that cannot be performed by Ms. Gaathje because Ms. Gaathje is unable to concentrate to learn and perform this reasoning level of work." [Doc. #13-1 at 19]. Plaintiff tellingly does not support this argument with any citations to the record. The Dictionary of

Occupational Titles provides that a Reasoning Level Four

requires an individual to:

> Apply principles of rational systems to solve
> practical problems and deal with a variety of concrete
> variables in situations where only limited
> standardization exists. Interpret a variety of
> instructions furnished in written, oral, diagrammatic,
> or schedule form. (Examples of rational systems
> include: bookkeeping, internal combustion engines,
> electric wiring systems, house building, farm
> management, and navigation.)

Jackson v. Astrue, No. 06-CV-6372 CJS, 2007 WL 1428442, at *9

(W.D.N.Y. Apr. 25, 2007) (quoting Dictionary of Occupational

("DOT") Titles, Appendix C).

As stated above, the ALJ properly determined at step two

that plaintiff suffers only mild limitations in her ability to

concentrate. (Tr. 24). There is no indication in the record that

plaintiff would be unable to carry out the tasks as required by

the DOT's description of a receptionist's duties. There is also

substantial evidence of record indicating that plaintiff has an

adequate ability to concentrate. For example, on examination,

plaintiff regularly presented as alert, oriented, cooperative,

with normal/appropriate mood and affect, normal concentration,

intact memory, and with good judgment, attention, and normal

cognitive flexibility and thought process. (Tr. 438-39, 444,

449, 451, 454, 458, 467, 471, 477, 485, 489, 494, 498).

Accordingly, the Court finds no error in the ALJ's determination

that plaintiff would be able to perform the tasks required of a receptionist.

Therefore, for the reasons stated, the Court finds that the ALJ relied on an RFC which is supported by substantial evidence in the record, and there is no step five error.

## VI.   CONCLUSION

For the reasons set forth herein, defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #17] GRANTED**. Plaintiff's Motion for Order reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #13]** is **DENIED**.

This is a Recommended Ruling. See Fed. R. Civ. P. 72(b)(1). Any objections to this Recommended Ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with order. See Fed. R. Civ. P. 72(b)(2). **Failure to object within fourteen (14) days may preclude appellate review.** See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ. R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at New Haven, Connecticut, this 11th day of July, 2016.

```
    /s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
```