UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE GAATHJE, | : | |
|   Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 3:15-cv-01049 (VLB) |
| | : | |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF SOCIAL | : | February 17, 2017 |
| SECURITY, | : | |
|   Defendant. | : | |

RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S
MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of the Plaintiff, Nicole

Gaathje's, application for disability insurance benefits ("DIB") and supplemental

security income benefits (SSI)[1]  It is brought pursuant to 42 U.S.C. §§ 405(g).

Nicole Gaathje ("Plaintiff" or "Gaathje") has moved for an order reversing

the decision of the Commissioner of the Social Security Administration

("Commissioner"), or remanding the case for rehearing.   [Dkt. No. 13.]  The

Commissioner, in turn, has moved for an order affirming the decision.  [Dkt. No.

17.]  Magistrate Judge Sarah A. L. Merriam rendered a Recommended Ruling on

the Cross Motions, recommending Plaintiff's Motion to Reverse the Decision of

---

[1]  Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]."  42 U.S.C. § 405(b)(1).  The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs").  C.F.R. §§ 404.929 *et seq.*  Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council.  20 C.F.R. §§ 404.967 *et seq.*  If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States District Court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

The Commissioner be denied, and recommending Defendant's Motion to Affirm be granted.  [Dkt. No. 19.]  Plaintiff filed an Objection to the Recommended Ruling [Dkt. No. 20], and Commissioner filed a Response in favor of the Recommended Ruling.  [Dkt. No. 21.] The Court accordingly reviews de novo the Magistrate Judge's Recommended Ruling.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3). The Court may adopt, reject, or modify, in whole or in part, the Magistrate Judge's Recommended Ruling.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

For the following reasons, the Recommended Ruling is adopted, Gaathje's Motion for an Order Reversing or Remanding the Commissioner's Decision [Dkt. No. 13] is DENIED, and the Commissioner's Motion to Affirm that Decision [Dkt. No. 13] is GRANTED.

I.    Factual Background

The following facts are taken from the parties' Joint Stipulation of Facts ("Joint Stipulation") [Dkt. No. 16] unless otherwise indicated, and are undisputed unless otherwise indicated.

a.   Plaintiff's Background

Gaathje was born on October 21, 1975.  [Dkt. No. 16 at 1.]  She did not graduate from high school and has not obtained a GED.  *Id.*  She was last insured on June 30, 1996.[2]  [*Id.* at 211.]  Gaathje's alleged disability began on or about April 2, 2011.  *Id.* at 1.  On December 21, 2011 Gaathje filed an application for disability benefits, and on December 23, 2011, she applied for supplemental

---

[2]  In order to be entitled to disability benefits, a plaintiff must "have enough social security earnings to be insured for disability, as described in § 404.130." 20 C.F.R. § 404.315(a)(1).

2

security income.  [Dkt. No. 11-6 at 183, 191.]   On February 24, 2012, a disability adjudicator in the Social Security Administration denied her initial request for disability benefits and thereafter denied her request for reconsideration.  [Dkt. Nos. 11-4 at 60, 72.]

On August 29, 2013, Gaathje appeared (with counsel) for a hearing before an ALJ.  [Dkt. No. 11-3 at 31.]  On October 23, 2013, the ALJ issued a decision denying benefits.  *Id*. at 17.  On May 18, 2015, the appeals council denied Gaathje's request for review of that decision thereby making the ALJ's decision the final decision of the Commissioner.  *Id*. at 1.   This appeal followed.

b. Plaintiff's Medical History

Gaathje was first examined for blurred vision, shortness of breath, and chronic dizziness on August 7, 2009.  *Id*. at 1.  On October 20, 2009, Dr. N.J. Holzer noted Gaathje showed symptoms of vertigo with hearing loss, and that her August 9 MRI showed no other conditions except indications of sinus disease. *Id*. at 1.

In the years following her October 2009 diagnosis of vertigo and hearing loss, Gaathje has reported various symptoms to physicians, including anxiety, trouble sleeping, tinnitus, pain in her back, hands, wrists, elbows, knees, legs, ankles and feet, heartburn, and difficulty breathing when exposed to irritants in the air.  [*Id*. at 2-4; Dkt. No. 11-8 (Medical Records) at 353 (anxiety, back pain, abdominal pain as of August 2011), 381 (tinnitus and continued dizziness, hearing loss, vertigo, and joint pain as of March 2012), 369-70 (continued anxiety, dizziness, back and joint pain, and gastroesophageal reflux as of April 2012), 411

3

(continued back pain, abdominal pain, anxiety in May 2012), 494 (hand pain, difficulty breathing as of October 2012), 447 (joint pain as of April 2013), 443 (anxiety and trouble sleeping as of April 2013).]

A physical exam in March of 2012 by Jessica Plasse, APRN and accompanying consultation by Dr. Gregory Lesnik found that Gaathje had symptoms consistent with vertigo and "possible Meniere's disease given her history of hearing loss in the left ear."  [Dkt. No. 11-8 at 382.]   Dr. Lesnik ordered a diagnostic test to determine whether Gaathje experienced Meniere's disease or vestibular migraines.  *Id.* at 382.  The diagnostic test, a videonystagmography (VNG) evaluation, found Gaathje had "borderline normal VNG" with "not clinically significant" variations.  *Id.* at 416.  In conjunction with the VNG, Gaathje completed a questionnaire regarding her dizziness and hearing loss, and also reported she experienced impaired vision, lip numbness and tingling, weakness in her arms or legs, and a "tendency to get upset easily."  *Id.* at 411-12.  At a follow-up appointment in June 2012, Dr. Lesnik reviewed the diagnostic results and concluded "Meniere's disease is a very likely diagnosis."  *Id.* at 426.  Similarly, in conjunction with an April 2012 physical exam also by Ms. Plasse, Dr. Robert Sidman also concluded Gaathje experienced "dizziness/possible Meniere's disease."  [Dkt. No. 11-8 at 391.]

In addition to Meniere's disease, physical exams by Ms. Plasse as early as August 2011 consistently assess that Gaathje experiences anxiety disorder.  [Dkt. No. 11-8 at 354.]  Gaathje has taken various anxiety medications since 2011.  [*See e.g.*, *id.* at 354 (August 2011 anxiety medication), 391 (April 2012 anxiety

medication.]  When Gaathje switched primary care doctors in March 2013, Andrea Dameron, APRN, referred Gaathje for a mental health evaluation.  *Id.* at 440.  At the evaluation in April 2013, Gaathje reported anxiety that began with trauma during her adolescence and has increased in recent years due to medical complications.  *Id.* at 444.  Gaathje reported that her "medical issues . . . keep her from doing things she wants to do."  *Id.* at 444.  Despite that, Gaathje listed her personal strengths as artistic talent, gardening, her sense of humor, and her relationship with her children.  *Id.* at 443.  Beth LaFontaine, LADC, Gaathje's mental health evaluator, found no abnormalities in Gaathje's mental status or behavior.  *Id.* at 444.  Ms. LaFontaine concluded Gaathje experienced anxiety, educational problems, impairment in social, occupational, or school functioning, and other psychosis and environmental problems, and created a treatment plan requiring Gaathje to attend weekly therapy sessions.  *Id.* at 444-46.

In May 2013, Lisa Harrison, APRN also evaluated Gaathje's mental health.  *Id.* at 456.  Ms. Harrison found Gaathje had normal thought processes, mood and affect, associations, judgment and insight.  *Id.* at 458.  Ms. Harrison found no hallucinations, delusions, or psychotic thoughts.  *Id.*  Ms. Harrison prescribed two anxiety medications with a plan to assess side effects and efficacy at a follow-up appointment.  *Id.* at 456-58.  At a subsequent appointment two weeks later, Gaathje reported continued anxiety and trouble sleeping.  *Id.* at 466.  Ms. Harrison adjusted Gaathje's medication.  *Id.* at 466.

Gaathje has also been treated for abdominal pain and irritable bowels.  In January of 2011, Gaathje reported to Ms. Plasse abdominal pain and irritable

bowels, but stated symptoms were controlled with prescribed medication along with over-the-counter heartburn medication. *Id.* at 341. In April 2012, Ms. Plasse examined Gaathje and Dr. Sidman prescribed Gaathje medication to treat gastroesophageal reflux and abdominal bloating, as well as continued medication for Gaathje's anxiety and dizziness. *Id.* at 391. In addition, Gaathje's medical records indicate a history of gestational diabetes. *Id.* at 447.

Ms. Plasse has also treated Gaathje for Reactive Airways Dysfunction Syndrome. [Dkt. No. 11-9 (Continued Medical Records) at 494.] Gaathje reported "deep breathing" and a cough, for which Ms. Plasse prescribed use of two inhalers. *Id.* at 494.

Gaathje also reported hand pain in October 2012. *Id.* at 494. An x-ray of the hand in October 2012 was normal. *Id.* at 527. In June 2013, Gaathje reported to the emergency room with wrist, hand, elbow, and foot pain. *Id.* at 538. X-rays and evaluation showed possible rheumatoid arthritis, but the treating emergency physician could not exclude other possible diagnoses. *Id.* The emergency physician treated Gaathje with pain medication. *Id.* In August 2013, Gaathje saw Dr. Sandeep Varma regarding her joint and extremity pain. *Id.* at 519. Dr. Varma found no evidence of inflammatory disease, but likely polyarthralgia. *Id.* Dr. Varma prescribed Celebrex for Gaathje's pain. *Id.*

  c. <u>Expert Examinations and Opinions</u>

On August 29, 2013, APRN Dameron, who treated Gaathje for the ten (10) week period beginning May 29, 2013 and ending August 8, 2013, completed a medical source statement regarding Gaathje. [Dkt. No. 11-9 at 558.] Ms.

Dameron's statement indicated that that Gaathje has the following limitations: 1) she may occasionally and frequently lift 10 pounds; 2) she may stand, walk, and sit for six hours in an eight hour day; 3) she is limited in pushing and pulling; 4) she cannot kneel or crawl; 5) she can occasionally climb, balance, crouch, and stoop; 6) she is limited in the ability to finger and can reach only occasionally; 7) she is limited in hearing; and 8) she is limited in her exposure to noise. *Id.* at 558-61. Ms. Dameron lists as the reasons for Gaathje's limitations polyarthralgia involving multiple joints, vertigo, hearing loss, Meniere's Disease, and chronic tympanic disturbances. *Id.* at 558-61.

Prior to Dr. Damerons assessment, on February 23, 2012, Dr. Barbara Coughlin, a State agency medical consultant, reviewed Gaathje's medical records, communicated with Gaathje, and provided an analysis for Gaathje's disability benefits claim. [Dkt. No. 11-4 at 54.] Dr. Coughlin found Gaathje's vestibular system disorder (vertigo and dizziness) constituted a severe medically determinable impairment. *Id.* at 56-7. Dr. Coughlin found Gaathje's statements regarding her symptoms "partially credible," in light of medical assessments showing "mild" or "intermittent" causes for her reported symptoms. *Id.* at 57. Dr. Coughlin found Gaathje had no exertional limitations, could climb ramps or stairs occasionally, could never climb ladders, could occasionally balance, and could stoop, kneel, crouch, or crawl without limitation. *Id.* at 57. Dr. Coughlin also found Gaathje should avoid all exposure to "hazards (machinery, heights, etc.)." *Id.* at 58. All limitations were ascribed to Gaathje's vertigo and dizziness. *Id.* at 57-58.

7

Finally, on July 11, 2012, Dr. Nabil Habib, a State agency medical consultant, reviewed Gaathje's medical records and information supplied by Gaathje, and provided a second analysis for Gaathje's disability benefits claim. [Dkt. No. 11-4 at 68.]  Dr. Habib also found Gaathje's vestibular system disorder constituted a severe medically determinable impairment.  *Id.* at 68.  Like Dr. Coughlin, Dr. Habib found Gaathje's account of her symptoms partially credible based on mild or intermittent evidence of causal conditions.  *Id.* at 69.  Dr. Habib determined Gaathje had the same limitations Dr. Coughlin identified, caused by Gaathje's vertigo and dizziness.  *Id.* at 69-71.

      d.  <u>The Hearing Before the ALJ</u>

On August 29, 2013, Gaathje appeared for a hearing before ALJ Ryan Alger. [Dkt. No. 11-3 at 31.]  Gaathje was represented by counsel.  *Id.* at 33.  Gaathje testified she last worked in 2011, as a plant merchandiser in customer service for Lowe's Home Store.  *Id.* at 36.  Gaathje stated she ceased working after "only a couple months" because the work was too physically taxing.  *Id.* at 36.  Gaathje explained "it was a lot of lifting and bending, and walking, standing."  *Id.* at 36-37.

Gaathje testified to her abilities and disabilities at the hearing.  She testified that she currently lives with her husband and three children, aged eighteen, sixteen, and eight (as of the time of the hearing).  *Id.* at 37.  Gaathje indicated bright lights trigger her vertigo and dizziness, and that she has to wear sunglasses in the grocery store.  *Id.* at 38.  In 2011, she had a vertigo episode triggered by viewing headlights and street lamps while driving at night.  *Id.* at 37. As a result, she no longer drives.  *Id.*  In fact, Gaathje indicated the fluorescent

8

lights at the hearing made her dizzy, and it appears from the transcript the ALJ turned off the overhead lighting for her.  *Id.* at 37-38.

Gaathje testified she usually feels comfortable lifting and carrying up to five pounds at a time, but that sometimes lifting a gallon of milk "aggravate[s]" her symptoms.  *Id.* at 42.  Her joint pain prevents her from cooking 2-3 times per week, and certain cooking tasks, like "lift[ing] the pan [of pasta] up to strain the water," are particularly painful.  *Id.* at 39, 41.  She also has difficulty doing laundry.  *Id.* at 39.  However, Gaathje can regularly load her dishwasher and dust, and her children and husband help her with other chores as necessary.  *Id.* at 39.

In addition, Gaathje indicated she sometimes has trouble getting into and out of bed because it requires her to bend her knees.  *Id.* at 40.  Gaathje testified she has trouble with activities requiring her to lift her arms above her head, including putting on a shirt and washing her hair, but she can otherwise dress and bathe herself.  *Id.*  Gaathje agreed with the ALJ's characterization that "some days are better than others."  *Id.* at 39.

Gaathje has vertigo episodes about twice a week, they occur at random, and they last roughly half an hour.  *Id.* at 42-43.  When she has a vertigo episode, the room spins and she is left with "no energy."  *Id.* at 43.  Medication helps to manage her episodes, however, she testified it's "usually a good two days before I start to feel normal again."  *Id.*  Gaathje also indicated she gets migraines two or three times per week, sometimes concurrent with vertigo episodes.  *Id.*  She manages migraines by lying down with a cold compress and taking medicine.  *Id.* at 44.  A migraine typically lasts three to four hours.  *Id.*  Migraines and vertigo

episodes are also sometimes accompanied by blurry vision. *Id.* In addition, Gaathje indicated her ears ring two to three times per month, for about half an hour per episode. *Id.* at 45.

Gaathje indicated she sometimes experiences panic attacks when away from home, caused by fear that she might have a vertigo episode. *Id.* at 46. Panic attacks cause her shortness of breath and racing thoughts. *Id.* Gaathje participates in counseling sessions twice per week for anxiety treatment, and also sees a psychiatrist monthly. *Id.* at 45. The psychiatrist has prescribed her with medications, the combined effect of which helps "somewhat" but "not 100 [percent]." *Id.*

In addition to Gaathje's testimony, the ALJ heard testimony from a vocational expert, Dr. Steven Sachs. *Id.* at 47. Dr. Sachs stated a person of Gaathje's age, education, and work experience, who has no exertional limitations but must avoid hazardous machinery and unprotected heights, could work as a receptionist, general office clerk, or unskilled production inspector. *Id.* at 48. All three possible jobs require a "light" level of work, and are available in significant numbers in both the national economy and Connecticut. *Id.* However, Dr. Sachs stated Gaathje would not qualify for any of the three suggested jobs if she needed to be absent one day per week or up to four days per month, or if she needed to take unscheduled breaks for up to 25 percent of the workday. *Id.*

### e. The ALJ's Decision

On October 23, 2013, ALJ Alger issued a decision adverse to Gaathje. [Dkt. No. 11-3 at 20.] The ALJ concluded Gaathje was not disabled within the meaning

of the Social Security Act as of December 20, 2011, the date the application was filed.  *Id.*

ALJ Alger found that Gaathje's vertigo constitutes a "severe impairment," but that none of Gaathje's conditions meet the severity of an impairment listed in Appendix 1 of the social security regulations.  *Id.* at 25.  ALJ Alger evaluated Gaathje's Meniere's disease under listing 2.07, concerning disturbance of the labyrinthine-vestibular function, but found no evidence that Gaathje experienced "frequent attacks of balance disturbance accompanied by disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests."  *Id.*  ALJ Alger cited in support of his finding that the vestibular tests Gaathje underwent "showed borderline normal results that were not clinically significant."  *Id.*

ALJ Alger then assessed Gaathje's Residual Functional Capacity ("RFC"). *Id.*  The ALJ followed the required two-step process for RFC analysis, first identifying all medically determinable physical or mental impairments underlying Gaathje's symptoms, and then evaluating the intensity, persistence, and limiting effects of symptoms reasonably attributable to any identified impairments.  *Id.* at 25-26.  ALJ Alger considered "the entire record" at step one, and in his decision expounded upon treatment notes regarding her potential vertigo, dizziness, and distress, her VNG test results, and her possible Meniere's disease diagnosis.  *Id.* at 26-27 (noting Gaathje's "borderline normal" VNG results and Dr. Lesnik's notes "question[ing] whether the claimant had Meniere's disease").  ALJ Alger concluded that Gaathje's "main problems stem from her Meniere's disease. However, imaging of her brain has revealed no abnormalities and the vestibular

11

testing performed showed borderline normal results.  Additionally, her symptoms of dizziness seem to correspond with her sinus infections and improve when her respiratory symptoms improve." *Id.* at 28.  ALJ Alger concluded that Gaathje maintains the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: no exposure to hazardous machinery or unprotected heights." *Id.* at 25.

ALJ Alger also explained the weight he gave to various medical professionals' opinions in his RFC analysis.  ALJ Alger afforded "little weight to Nurse Dameron's opinion," given that, as a nurse, she is a "nonmedical source" under the Social Security Act. *Id.* at 28.  In addition, the ALJ noted that Nurse Dameron only treated Gaathje for a short period of time, and that most of the limitations she identified were based on Gaathje's reports of pain rather than her vertigo. *Id.*  ALJ Alger emphasized that Gaathje's joint pain "has not been attributed to any particular impairment." *Id.*

In contrast, ALJ Alger afforded "great weight" to the opinions of the State agency consultants because they are "consistent with the medical evidence, which establishes that the claimant presents mood abnormalities at times, limiting her to an unskilled level or work activity with limited interactions." *Id.* at 28.  The ALJ also noted that "evidence submitted after [the consultants'] opinions were rendered shows that the claimant is stable when compliant with her medications." *Id.* at 29.

As to Gaathje's vocational prospects, ALJ Alger noted Gaathje has not engaged in substantial gainful employment since April 2, 2011, the alleged onset

12

date of her disability.  *Id*. at 29.  Accordingly, transferability of job skills is not a consideration in the vocational analysis.  *Id*.  The ALJ found Gaathje has nonexertional limitations limiting her potential work, and agreed with the vocational expert's recommendation that Gaathje could work as a receptionist, general office clerk, or production inspector.  *Id*. at 30.

II.   Standard of Law

A magistrate judge's ruling on a dispositive matter is reviewed by the district judge de novo.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3).  The Court may adopt, reject, or modify, in whole or in part, a magistrate judge's recommended ruling.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.§ 405(g), is performing an appellate function."  *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ."  42 U.S.C. § 405(g).  Accordingly, the Court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  *Id*.; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his/her conclusion, and whether the decision is supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  *Berry v. Schweiker*,

675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record."  *Williams*, 859 F.2d at 258.

The Social Security Act establishes that benefits are payable to individuals who have a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."  42 U.S.C. § 423(d)(1).  In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[3]

---

[3]  The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual

A person is disabled under the Act when their impairment is "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*[4]

## III.   Discussion

Magistrate Judge Merriam's Recommended Ruling would sustain the Administrative Law Judge's ("ALJ") ruling on all grounds on which Gaathje moved for reversal.  Those grounds include whether: (1) the ALJ erred in finding Gaathje had the severe impairment of vertigo, but failing to find any of her other alleged impairments to be "severe," including pain in and of itself;[5] (2) the ALJ erred at step three of the sequential evaluation by finding Gaathje's Meniere's Disease does not meet or equal the requirements of listed impairment 2.07; (3)

---

functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)—(v).

[4]  The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  *Id.*

[5] The ALJ's evaluation of Gaathje's pain is listed as a separate ground for reversal in Gaathje's Motion to Reverse.  [Dkt. No. 13 at 14.]  Gaathje's allegation that the ALJ did not properly evaluate Gaathje's pain implicates whether the ALJ properly determined her pain did not constitute a severe impairment and whether the ALJ evaluated her pain appropriately when determining Residual Functioning Capacity.  *Id.*  Accordingly, to avoid repetition, the Court includes the ALJ's pain analysis within the first and fifth grounds on which Gaathje moved to reverse, as listed herein.

the ALJ erred in his evaluation of the evidence by concluding Gaathje is able to perform household chores and care for her child; (4) the ALJ properly weighed the opinion evidence of Gaathje's treating source, APRN Andrea Dameron, compared with the opinion evidence of non-treating physicians; (5) the ALJ properly determined Gaathje's Residual Functional Capacity based on the limited number of medically determinable impairments the ALJ identified; and (7) the ALJ failed to present evidence that jobs exist in the national economy which Gaathje could perform.  [Dkt. No. 19.]

The issues presented in Plaintiff's Objection to the Recommended Ruling are whether: (1) the ALJ properly determined Plaintiff's Meniere's Disease does not meet or equal the requirements of Listing 2.07; (2) the ALJ erred in assigning "little weight" to APRN Andrea Dameron's opinion, and assigning greater weight to non-treating doctors Barbara Coughlin and Nabil Habib; (3) ALJ Alger erred in his RFC analysis by concluding that Plaintiff's pain, polyarthralgia, fatigue, sensitivity to noise and pulmonary irritants are not medically determinable impairments; and (4) the ALJ failed to consider Gaathje's own statements regarding her functional capacity.  [Dkt. No. 20.]

Gaathje does not object to the Recommended Ruling's findings that (1) the ALJ properly determined that Gaathje had the severe impairment of vertigo, but no other impairments qualifying as "severe" under step two of the disability analysis; (2) the ALJ properly evaluated the evidence and concluded Gaathje is able to perform household chores and care for her child; and (3) the ALJ failed to

present evidence that jobs exist in the national economy which Gaathje could perform.  [Dkt. No. 19.]

The Court has reviewed the full record of the case including applicable principles of law, and has reviewed Magistrate Judge Merriam's Recommended Ruling.  The Court adopts the portions of the Recommended Ruling to which Gaathje has not objected.  The scope of the Court's discussion of its de novo review of the ALJ's decision is limited to Gaathje's four objections to the recommended ruling, each of which is discussed in turn below.

### a. Whether Gaathje's Meniere's Disease Meets or Equals the Requirements of Listing 2.07

Gaathje asserts her Meniere's Disease meets or equals the requirements of Appendix A of the social security regulations.  [Dkt. No. 20 at 1-2.]

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (quoting 20 C.F.R. § 416.926(a) (1989)).  Listing 2.07 addresses:

> Disturbance of labyrinthine-vestibular function (Including Meniere's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing.  With both A and B:
> a. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
> b. Hearing loss established by audiometry.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 2.07.

ALJ Alger determined Gaathje did not meet or equal the requirements of Listing 2.07 because her vestibular tests "showed borderline normal results that

were not clinically significant." [Dkt. No. 11-3 at 25.] Accordingly, Gaathje did not meet subsection A of listing 2.07. *Id.* Magistrate Judge Merriam agreed with ALJ Alger's finding, adding that Gaathje's medical records indicate that her vestibular tests showed "ocular-motor results were within normal limits" and "bithermal caloric irrigations suggested no significant unilateral weakness nor directional preponderance." [Dkt. No. 19 at 20-21 (citing Dkt. No. 11-8 at 416).] The Recommended Ruling also notes, as the Court has found upon its own review, that the "record is otherwise devoid of evidence of disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests." *Id.*

Gaathje offers no evidence suggesting the vestibular test performed were not "borderline normal" with "not clinically significant" variations. [Dkt. No. 11-8 at 416.] Gaathje instead suggests that "[i]f the ALJ had any questions about Ms. Gaathje's Meniere's Disease, which appears to meet or equal a Listing, he should have obtained testimony from a medical expert." [Dkt. No. 20 at 2.] Gaathje confuses the burden of proof. "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant." *Santiago v. Astrue,* 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing *Pratts v. Chater,* 94 F.3d 34, 37–38 (2d Cir. 1996)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 129 S.Ct. 1696, 1706 (2009). Gaathje's medical record was developed. Her condition was tentatively diagnosed and she underwent an objective clinical diagnostic vestibular test designed to confirm or refute the diagnosis. The fact that the test revealed that

18

she was "borderline normal" and there were no "clinically significant" variations is dispositive.  Gaathje has not shown that failure to seek additional information regarding her condition was harmful; her argument that ALJ Alger inadequately developed the record accordingly fails.

Absent evidence supporting Gaathje's contention that she meets all requirements of Listing 2.07, the Court denies Gaathje's motion to reverse the ALJ's finding that Gaathje does not have any impairments which meet or equal the requirements of a listed impairment, and grants the motion to affirm on this ground.  The Court adopts the Recommended Ruling's explanation of this point.

### b. Whether the ALJ appropriately weighed the opinions of APRN Andrea Dameron, Dr. Barbara Coughlin and Dr. Nabil Habib

Gaathje next asserts APRN Dameron's opinion regarding Gaathje's limitations should have been accorded more weight than the opinions of Drs. Coughlin and Habib.  [Dkt. No. 20 at 2-3.]  Specifically, Gaathje asserts that because APRN Dameron was Gaathje's treating physician for the 10-week period from May 29, 2013 through August 8, 2013, APRN Dameron's opinion should be given controlling weight in the RFC analysis.  *Id.*  Gaathje also argues Dr. Coughlin and Dr. Habib's medical opinions should be given little weight because they are not treating physicians.  *Id.*

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. §

404.1527(d)(2*)); see also Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014)

(holding that "[a] treating physician's opinion need not be given controlling

weight where it is not well-supported or is not consistent with the opinions of

other medical experts" where those other opinions amount to "substantial

evidence to undermine the opinion of the treating physician").  "The regulations

further provide that even if controlling weight is not given to the opinions of the

treating physician, the ALJ may still assign some weight to those views, and

must specifically explain the weight that is actually given to the opinion." *Schrack

v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing *Schupp v. Barnhart*, No.

Civ. 3:02CV103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).

It is "within the province of the ALJ to credit portions of a treating

physician's report while declining to accept other portions of the same report,

where the record contained conflicting opinions on the same medical condition."

*Pavia v. Colvin*, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at 4 (W.D.N.Y. Aug. 4,

2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). In determining

the amount of weight to give to a medical opinion, the ALJ considers the

examining relationship, the treatment relationship, the length of treatment, the

nature and extent of treatment, evidence in support of the medical opinion,

consistency with the record, specialty in the medical field, and any other relevant

factors.  20 C.F.R. § 404.1527.

ALJ Alger afforded less weight to APRN Dameron's opinion than to Dr.

Coughlin and Dr. Habib's articulated opinions for three reasons.  [Dkt. No. 11-3 at

28.]  First, Ms. Dameron is a nurse, and accordingly is not considered an

"acceptable medical source" under the social security regulations.  10 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5) (listing acceptable medical sources who can provide evidence to establish an impairment, none of which include nurse practitioners); *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (stating a nurse practitioner's opinion "does not warrant the same deference as a physician's opinion" in a disability analysis); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) ("the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician").  Dr. Coughlin and Dr. Habib, however, do qualify as medical professionals.  *See id.*

Second, Ms. Dameron only treated Gaathje for roughly ten weeks, which ALJ Alger found limited the reliability of her opinion.  *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (listing length of treatment relationship among factors the ALJ should consider in weighing a medical opinion); *Ladd v. Comm'r of Soc. Sec.*, No. 5:13-cv-0236, 2014 WL 2779167, at *8 (N.D.N.Y. June 19, 2014) (stating a treating physician's short period of treatment may lessen the reliability of his or her opinion).

Finally, ALJ Alger found Ms. Dameron's opinion was based mostly on Gaathje's subjective reports of her symptoms, and conflicted with objective medical evidence.  *See Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (stating a medical opinion may be given less weight if based on the patient's subjective reports of symptoms, when those subjective reports conflict with medical evidence); *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (same); *Polynice v. Colvin*, 574 F. App'x 28, 31 (2d Cir. 2014) (same).  Many of the limitations Ms.

21

Dameron identified stemmed from Gaathje's reports of pain, rather than her vertigo.  [Dkt. No. 11-9 at 558-61 (listing as limitations Gaathje's inability to lift, push, pull, finger, or reach).]  However, Gaathje has undergone multiple x-rays and evaluations for her joint pain, which have resulted in over-the-counter and prescription pain medications, but no diagnosis.  [Dkt. No. 11-9 at 538.]  In contrast, Dr. Coughlin and Dr. Habib based Gaathje's limitations only on her vertigo and dizziness, which have been diagnosed.  [Dkt. No. 11-4 at 54-71.]

Gaathje offers no evidence in the record which ALJ Alger failed to consider in determining how to weigh the opinion evidence provided.  Rather, Gaathje quotes the treating physician rule and asserts that Ms. Dameron treated Gaathje, while Drs. Coughlin and Habib did not.  [Dkt. No. 20 at 2-4.]

The Court concludes that the ALJ's decision to not give Ms. Dameron's assessment controlling weight is supported by substantial evidence.  Gaathje's motion to reverse on this ground is denied and the Commissioner's motion to affirm is granted.  The Recommended Ruling's explanation of this point is adopted.

### c.  Whether the ALJ appropriately evaluated Gaathje's Residual Functional Capacity

Gaathje also asserts the ALJ should have considered her joint pain as attributable to polyarthralgia, a medically determinable impairment, for the purpose of the RFC analysis.  [Dkt. No. 20 at 4.]  In addition, Gaathje asserts ALJ Alger should have considered her "fatigue, inability to be exposed to noise and pulmonary irritants."  *Id.* at 4-5.

22

Residual functional capacity ("RFC") is "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.[6] A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*  RFC is "an assessment based upon all of the relevant evidence . . . [which evaluates a claimant's] ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions." 20 C.F.R. § 220.120(a).[7]

An ALJ must consider all "medically determinable impairments" presented in the record, "including [any] medically determinable impairments that are 'not severe.'"  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("A RFC determination must account for limitations imposed by both severe and nonsevere impairments.")  However, the ALJ may only consider "symptoms, including pain, which are reasonably attributed to a medically determinable impairment."  SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *see also Waddell v. Colvin*, No. 3:14-cv-0092, 20116 WL 538471, at *4 (N.D.N.Y. Feb. 9, 2016) ("Only functional limitations that are the

---

[6] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (internal quotation marks omitted).

[7]  An ALJ must consider both a claimant's severe impairments and non-severe impairments in determining his/her RFC. 20 C.F.R. § 416.945(a)(2); *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984).

result of medically determinable impairments are considered in the RFC assessment.").

To the extent attributable to a medically determinable impairment, the ALJ "is required to take the claimant's reports of pain and other limitations into account." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  However, the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Id.*

ALJ Alger evaluated whether Gaathje's joint pain was attributable to a medically determinable impairment, and specifically considered rheumatologist Dr. Sandeep Varma's medical notes from August 9, 2013 mentioning "likely polyarthralgia."  [*Id.* at 25; Dkt. No. 11-9 at 518-19.]  Dr. Varma's medical notes indicate Gaathje complained of "pain in her hands, elbows, knees, ankles and shooting pains in her legs and hands."  [Dkt. No. 11-9 at 518.]  Dr. Varma found Gaathje experienced "some decreased range of motion," and tenderness in the wrists, shoulders, knees, and ankles.  *Id.* at 519.  However, Dr. Varma's examination revealed no synovitis[8] and a "normal rheumatoid factor."  *Id.*  Dr. Varma's "impression" after her examination was "likely polyarthralgia, [but] "no evidence of inflammatory disease."  *Id.* at 519.  Gaathje suggests Dr. Varma's finding of "likely polyarthralgia" constitutes a diagnosis rendering Gaathje's joint

---

[8]  Synovitis is inflammation of connective tissue lining synovial joints.  *See* Synovitis Definition, MERRIAM-WEBSTER DICTIONARY,  https://www.merriam-webster.com/dictionary/synovitis (last visited Feb. 6, 2017).  Synovial joints allow for movement, for example, the shoulder or knee.  *See Diarthrosis Definition*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/diarthrosis#medicalDictionary (last visited Feb. 6, 2017).

24

pain a medically-determinable impairment.  However, polyarthralgia is defined as "pain in two or more joints."  *See Polyarthralgia Definition*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/medical/polyarthralgia (last visited Feb. 5, 2017).  Within the context of the disability analysis, it has been considered "a subjective complaint/symptom of painful joints."  *See, e.g.*, *Vilbrin v. Comm'r of Soc. Sec.*, No. 5:14-cv-0047, 2014 WL 7405448, at *5 n.1 (D. Vt. Dec. 29, 2014) (citing *Saari v. Merck & Co.*, 961 F. Supp. 387, 395 (N.D.N.Y. 1997)).

June 15, 2013 x-rays investigating Gaathje's joint pain also resulted in no diagnosis.  *Id.* at 538.  Dr. Varma and Dr. Siegel, the emergency room physician who reviewed Gaathje's June 2013 x-rays, both noted Gaathje's reports of pain in multiple joints, which Dr. Varma characterized as likely qualifying as polyarthralgia, but neither found a diagnosable cause, nor did any treating physician in the record.  ALJ Alger's determination that "claimant's polyarthralgia was not attributed to a specific diagnosis," and is accordingly "not a medically determinable impairment," is supported by the evidence in the record.  [Dkt. No. 11-3 at 25.]  Gaathje has failed to establish that ALJ Alger's failure to further develop the record regarding the source of Gaathje's joint pain was harmful.  *See Shinseki*, 129 S. Ct. at 1706 (explaining a claimant's burden of proof to establish failure to adequately develop the record).  Rather, the record indicates multiple medical sources examined Gaathje and found no diagnosable source of her pain.

In addition, Gaathje's characterization of her regular activities, including gardening, loading her dishwasher and dusting also support ALJ Alger's determination that further development of the record regarding Gaathje's joint

25

pain would not alter his determination.  [11-3 at 39; 11-8 at 443.]  Accordingly, Gaathje's motion to reverse the ALJ's conclusions regarding Gaathje's joint pain is denied, and the Commissioner's motion to affirm is granted.  The Recommended Ruling's explanation of this point is adopted.

As to her "inability to be exposed to noise," the only evidence of record supporting a noise limitation is APRN Dameron's opinion.  The Court upheld above the ALJ's determination that APRN Dameron's opinion warranted little weight.  Gaathje points to no other evidence in the record which ALJ Alger failed to consider which would support a finding that inability to be exposed to noise is traceable to one of Gaathje's medically determinable impairments.

Gaathje similarly offers no record evidence suggesting her inability to be exposed to pulmonary irritants is tied to a medically determinable impairment. Rather, the medical record indicates Gaathje's respiratory ailments are controlled with medication, inhalers, and prescription nasal spray.  [Dkt. No. 11-8 at 347, 394.]

Gaathje also offers no record evidence supporting a fatigue limitation. While Gaathje asserted in her initial Motion to Reverse the Decision of the Commissioner that her fatigue is attributable to vertigo, the record shows no medical evidence of fatigue aside from her own self-assessments.  *See, e.g.*, *id.* at 389-90.]  Nor were Gaathje's self-reports of fatigue consistent.  *See, e.g.*, *id.* at 438, 448, 498.

The court finds that the ALJ's RFC analysis and conclusions are supported by substantial evidence of record and, therefore Gaathje's motion to reverse on

the ground that ALJ Alger failed to consider certain ailments in his RFC analysis is denied and the Commissioner's motion to affirm is granted.  The Recommended Ruling's explanation of this point is adopted.

> **d.   Whether the ALJ Appropriately Considered Gaathje's Testimony**

Lastly, Gaathje argues "it was error for the ALJ not to consider Ms. Gaathje's statements when evaluating his RFC description."  *Id.* at 5.

In determining credibility, the ALJ must first determine if the claimant's asserted symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).  The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence of record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ should consider medical findings and other objective evidence in assessing the claimant's credibility.  *Id.* An ALJ may also consider the claimant's work record, whether positive or negative, in evaluating credibility.  *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).

Any "finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Williams on Behalf of Williams* v. *Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988).  The "ALJ's credibility determination is generally entitled to deference on appeal."  *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013).

27

ALJ Alger considered Gaathje's hearing testimony as to her daily life and her self-assessment of her limitations due to vertigo, dizziness, and joint pain. [Dkt. No. 11-3 at 26.]  However, ALJ Alger found Gaathje's characterization of her disabling symptoms inconsistent with the medical evidence of record.  *Id.*  The ALJ noted specifically that Gaathje's MRI results showed no brain abnormalities, and that her sinus pain and pressure, dizziness, and vertigo improved with prescription medication.  *Id.*  The ALJ also noted that treatment records indicate that examiners have questioned whether Gaathje experienced true vertigo as opposed to dizziness.  [*Id.*; Dkt. No. 11-8 at 353 ("Does not seem as though she's having true vertigo as much as episodes of dizziness").]  In addition, while Gaathje's VNG assessment for vertigo showed "borderline normal" results, the companion questionnaire Gaathje completed indicated she has "a tendency to get upset easily."  [Dkt. No. 11-8 at 411-12.]

Gaathje offers no record evidence ALJ Alger failed to consider in making his credibility assessment, but instead asserts that "it was error for the ALJ not to consider Ms. Gaathje's statements when evaluating his RFC description." [Dkt. No. 20 at 5.]  The Court finds ALJ Alger did consider Gaathje's statements in his RFC analysis, and properly "weigh[ed] the credibility of the claimant's testimony in light of the other evidence of record." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). Therefore, Gaathje's motion to reverse on this ground is denied and the Commissioner's motion to affirm is granted.  The Recommended Ruling's explanation of this point is adopted.

IV.   Conclusion

For the reasons set forth above, Gaathje's Motion for an Order Reversing or Remanding the Commissioner's Decision [Dkt. No. 13] is DENIED and the Commissioner's Motion to Affirm that Decision [Dkt. No. 13] is GRANTED.  The Recommended Ruling's thorough evaluation of the medical record and motions to reverse and affirm [Dkt. No. 19] is adopted in full.

It is so ordered this 17th day of February 2017, at Hartford, Connecticut.


_____

Vanessa L. Bryant, U.S.D.J.